UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THERESA IACOVO,

*Plaintiff*,

– against –

LAWRENCE P. MAGGUILLI;
MAGGUILLI LAW FIRM, PLLC,

*Defendants*.

**MEMORANDUM & ORDER**
24-cv-04372 (NCM) (ARL)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendants Lawrence P. Magguilli and Magguilli Law Firm, PLLC's motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons stated below, defendants' motion is **DENIED**.

## BACKGROUND

On December 18, 2018, Theresa Iacovo ("plaintiff" or "Iacovo") executed a power of attorney over healthcare decisions regarding her mother Geraldine Iacovo ("Geraldine"). Compl. ¶ 12. Geraldine retained the services of a home health aide ("HHA") through Attentive Care, a HHA agency. Compl. ¶ 14. On January 24, 2021, Geraldine

---

[1]      The Court hereinafter refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 24, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 25, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 26, as the "Reply."

signed a service agreement with Attentive Care. Compl. ¶ 15, Ex. A ("Service Agreement"), ECF No. 1-1.[2] The Service Agreement begins with "Client/Patient Name: Geraldine Iacovo," and states in relevant part: "I hereby absolutely and unconditionally guarantee to Attentive Care, Inc. the prompt payment when due of any and all past and future invoices. I understand I am fully financially responsible for any and all charges incurred in the course of treatment services rendered and shall pay weekly invoices upon receipt." Service Agreement ¶ 11. Other provisions on the first two pages of the Service Agreement also use the first-person pronoun "I." *See generally* Service Agreement 1–2.[3] In a field labelled "Client Signature," Geraldine signed her name. *See* Service Agreement 2.

On the following page, in a field labelled "Authorized Personal Representative Signature," Iacovo signed her name. Service Agreement 3. The term "Authorized Personal Representative" is not included anywhere in the first two pages of the Service Agreement. *See* Service Agreement 1–2. Iacovo filled in a field neighboring her signature labelled, "Relation to Client," with "Daughter POA." *See* Service Agreement 3.

Underneath the section filled out by Iacovo is a section titled in bold text: "This is a Guarantee of Payment[.]" Service Agreement 3. This section sets out an agreement to guarantee "prompt payment when due of any and all past and future invoices." Service Agreement 3. The title for the signatory page for this section is labelled "Co-signer / Guarantor." Service Agreement 3. This section was left blank in Geraldine's executed

---

[2]    In considering the motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[3]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

contract. Service Agreement 3. Following Iacovo and Geraldine's execution of the Service Agreement, Attentive Care began providing Geraldine HHA services. *See* Compl. ¶ 30.

On June 27, 2023, defendants, on behalf of Attentive Care, filed a summons and complaint in New York Supreme Court, County of Suffolk, to initiate a collection lawsuit against Iacovo and Geraldine, captioned *Attentive Care of Albany, Inc. v. Geraldine Iacovo and Theresa Iacovo*, under Index No. 615830/2023 (the "Collection Action"). Compl. ¶ 32. The summons and complaint were both signed by defendant Lawrence P. Magguilli, and the Service Agreement was attached. Compl. ¶¶ 33–34; *see also* Compl., Ex. B ("Summons & Complaint"), ECF No. 1-2. Magguilli is an attorney and principal of defendant Magguilli Law Firm, PLLC, a law firm which regularly collects consumer debts by filing collection lawsuits. Compl. ¶¶ 5–6. Iacovo was listed as a defendant in both the summons and complaint. *See* Summons & Complaint 1–2. The Collection Action alleged five claims for relief and sought $10,494.38 with interest and costs. Compl. ¶¶ 41, 48.

On July 10, 2023, Geraldine was served with the summons and complaint from the Collection Action. Compl. 2. Geraldine called Iacovo and notified her about the lawsuit. Compl. 2. Iacovo herself was never formally served with the summons or complaint. Compl. ¶ 49. A few weeks later, Iacovo filed an answer *pro se* on behalf of herself and, as power of attorney, on behalf of Geraldine. Compl. ¶ 50. In her answer, Iacovo stated that she "should not be a defendant in filing as she only serves as power of attorney for Geraldine Iacovo who is Blind—Theresa did not receive any services from Attentive Care nor is a guarantor of payment." Compl. ¶ 51.

On September 27, 2023, defendants filed a motion to strike the answer as to Geraldine and to enter a default judgment. Compl. ¶ 54; *see also* Opp'n 9; Compl., Ex. E

("Motion to Strike") 1, ECF No. 1-5. Once Iacovo learned of the motion, she searched for legal representation and retained the services of Nassau Suffolk Legal Services ("NSLS"). Compl. ¶ 55. NSLS appeared in the action, and defendants stipulated to withdraw their motion to strike as against Geraldine and to allow Iacovo and Geraldine to file an amended answer. Compl. ¶ 56. On December 20, 2023, Iacovo filed her amended answer, laying out why there was no cause of action against her, including that she "never intended to, and never did assume financial responsibility," pursuant to the Service Agreement. Compl. ¶ 60.

Months later, Iacovo filed and served a motion to dismiss. Compl. ¶ 61. On April 10, 2024, NSLS—on Iacovo's behalf—emailed Magguilli demanding that he discontinue the collection suit as to Iacovo. Compl. ¶ 62; *see also* Compl., Ex. H ("Demand to Dismiss Case"), ECF No. 1-8. Magguilli responded that his client would consent to dismissal as to both Iacovo and Geraldine without prejudice but that his client "would then want [him] to re-file and attempt service again." Compl. ¶ 68; *see also* Compl., Ex. I ("Emails on Discontinuing") 1, ECF No. 1-9. Magguilli also stated that he believed that his client "would be willing to settle the matter if the Iacovos ha[d] a settlement offer they could make." Compl. ¶ 69; *see also* Emails on Discontinuing 1. Ultimately, defendants agreed to discontinue the Collection Action without prejudice. Compl. ¶ 73.

On June 20, 2024, plaintiff filed the instant action asserting claims against defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). Specifically, plaintiff brings claims pursuant to provisions 15 U.S.C. § 1692e ('Section 1692e") and 15 U.S.C. § 1692f ("Section 1692f"), asserting that the Collection Action against her amounted to, among other things, an attempt to collect a

debt using false, deceptive, misleading, unfair, or unconscionable means. *See generally* Compl. Defendants moved to dismiss pursuant to Rules 12(b)(1) and Rules 12(b)(6). *See* Mot. 5.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[4] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v.*

---

[4]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(1), a case is properly dismissed "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Subject matter jurisdiction is "not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

## DISCUSSION

To state an FDCPA violation: "(1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *George v. Nationstar Mortg., LLC*, No. 16-cv-00261, 2017 WL 3316065, at *8 (E.D.N.Y. Aug. 2, 2017).

Defendants contest the third element: whether they engaged in an act in violation of FDCPA requirements. *See* Mot. 5–7. They move to dismiss the complaint on two primary grounds. First, defendants argue that "where a plaintiff's FDPCA claim arises

from the instigation of a debt collection suit, the plaintiff does not have a complete and present cause of action—and thus no violation occurs—until the plaintiff has been served." Mot. 5. Second, defendants assert that if plaintiff had been served, "she would be an appropriate party" to the Collection Action, and thus the attempt to collect the debt from her would not be unlawful. Mot. 5. The Court first analyzes the FDCPA's legal framework before turning to defendants' arguments.

## I.    Legal Framework

"The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors, to insure [sic] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)). Accordingly, the FDCPA "guide[s] judicial decision-making in two ways." *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 17-cv-00458, 2019 WL 4602329, at *3 (N.D.N.Y. Sept. 23, 2019) (citing *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)). First, as a consumer protection statute, the FDCPA's terms are to be construed "in liberal fashion." *Avila*, 817 F.3d at 75. Second, "courts are to view debt collection communications from the perspective of the least sophisticated consumer." *Park & Forster & Garbus, LLP*, No. 19-cv-03621, 2019 WL 5895703, at *2 (E.D.N.Y. Nov. 12, 2019) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)); *see also Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) ("[W]e ask how the least sophisticated consumer—one not having the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer—would understand [a] collection notice.").

An FDCPA action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). In *Benzemann v. Citibank N.A.*, the Second Circuit addressed when a violation "occurs"—and, consequently, when the statute of limitations begins to run—in the context of an allegedly unlawful restraining notice. 806 F.3d 98, 101 (2d Cir. 2015) ("*Benzemann I*"). There, an attorney for an assignee of Citibank obtained a state court judgment against a person named *Andrew* Benzemann. *Id.* at 99. The plaintiff, named *Alexander* Benzemann, was not a party to that action. *Id.* Subsequently, Citibank froze the plaintiff's bank account pursuant to a restraining order dated December 6, 2011. *Id.* at 100. The plaintiff alleged that Citibank froze his account "on or about December 14, 2011." *Id.*

The plaintiff filed a federal lawsuit on December 14, 2012, alleging that the attorney violated the FDCPA. *Id.* The attorney moved to dismiss, arguing that the suit was untimely because the complaint was filed over a year after the December 6, 2011 restraining notice. *Id.* The district court agreed and granted the motion. *Id.* Specifically, the court concluded that the FDCPA violation "occurred" when the attorney was alleged to have sent the restraining notice, rather than the date that Citibank froze the plaintiff's bank account. *Id.* at 101.

The Second Circuit reversed on appeal. *Id.* at 104. The court first explained that a "cause of action accrues when conduct that invades the rights of another has caused injury." *Id.* at 101. And until Citibank froze the plaintiff's account, "[he] had suffered no injury." *Id.* Thus, the plaintiff could not have brought suit before his account was frozen because, before that point in time, "he had no complete and present cause of action." *Id.* The court pointed out that the district court's approach would create "an anomaly." *Id.*

8

The Second Circuit reasoned that if the violation occurred for statute of limitations purposes when the restraining notice was transmitted—as the district court concluded—then the statute of limitations would have been running for eight days before the plaintiff would have been able to file suit when his account was frozen. *Id.* The court further noted that "[t]he Supreme Court teaches that courts should avoid interpreting statutes of limitations in a way that creates such an anomaly." *Id.* (citing *Reiter v. Cooper*, 507 U.S. 258, 267 (1993)).

The court placed importance on the fact that the plaintiff "could not have known that [the attorney] sent the allegedly unlawful notice until, at the earliest, his account was frozen." *Id.* at 102. The court noted that the plaintiff "contend[ed] that he did not learn about the allegedly unlawful notice until December 14, 2011." *Id.* Citing to the Fifth Circuit's decision in *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440 (5th Cir. 2013), and the Tenth Circuit's decision in *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), the court analogized the unlawful restraining notice to a debt collection lawsuit. *See Benzemann I*, 806 F.3d at 101–02. The Second Circuit explained that those cases stood for the proposition that an "FDCPA violation d[oes] not occur for purposes of Section 1692k(d) until the plaintiff ha[s] a complete cause of action under the FDPCA and notice of the violation," in those cases, when the debt collection lawsuits were served. *Id.* at 102–03. The court found that reasoning persuasive and concluded that in the case before it, "the FDCPA violation . . . did not occur until Citibank froze Benzemann's account because it was only then that he had a complete cause of action and notice of the FDCPA violation." *Id.* at 103.

The Second Circuit vacated the district court's judgment and remanded for further proceedings. *Id.* Importantly, the court noted that "the record [wa]s unclear as to when the freeze actually took place." *Id.* Recognizing that if the freeze in fact took place on December 13, 2011, the plaintiff's suit would be untimely, the court remanded the case "to the district court for whatever further proceedings [we]re necessary to resolve" the issue of the timing of the account freeze. *Id.* at 103.

The Second Circuit later clarified its *Benzemann I* decision in *Benzemann v. Houslanger & Associates, PLLC*, 924 F.3d 73 (2d Cir. 2019) ("*Benzemann II*"). Following factual development after remand, "it became clear that Citibank froze [the] [p]laintiff's accounts on December 13, 2011." *Id.* at 77. Thus, the district court found "that the alleged FDCPA violation occurred, triggering the statute of limitations—on December 13, 2011." *Id.* at 78. And because the plaintiff filed suit one year and one day later, the plaintiff's suit was untimely. *Id.* Accordingly, the district court granted summary judgment in the defendant's favor. *Id.* at 77–78.

On appeal, the plaintiff—relying on language from *Benzemann I*—argued that "the FDCPA's limitations period commences only when an individual is injured by unlawful conduct *and* receives notice of the FDCPA violation." *Id.* at 78. In the plaintiff's view, "the statute of limitations did not begin to run until [the] [p]laintiff learned that Citibank had frozen his accounts." *Id.* In rejecting that argument, the Second Circuit explained that its decision in *Benzemann I* "was whether an FDCPA violation can occur, for the purposes of the statute of limitations, *before* the victim is injured[,]" not "whether the triggering of the statute of limitations also requires notice of the FDCPA violation." *Id.* at 79.

The Second Circuit then turned to the language of the FDCPA and concluded that its statutory text was clear: "[a] violation—an infraction or breach of the law—occurs when it takes place." *Id.* at 80. As the court explained, "[i]t is one thing to conclude, as we did in *Benzemann I*, that a breach of the law might not take place until unlawful conduct causes an injury. But it is quite another to suggest that a breach of the law does not take place until a victim receives notice of the statutory violation. On Plaintiff's theory, if an individual never received such notice, a breach of the law never took place—no matter that the individual was in fact injured by unlawful conduct." *Id.*

Accordingly, the court squarely held that "[a]n FDCPA violation occurs, for the purposes of the FDCPA's one-year statute of limitations, when an individual is injured by the alleged unlawful conduct." *Id.* at 83.

## II.    Accrual of FDCPA Violation

As a threshold matter, defendants argue that Iacovo does not have a cause of action under the FDCPA, although she was allegedly improperly named as a defendant in the Collection Action, because she was never served. Mot. 10. Specifically, defendants argue that "[t]he precedent in the Second Circuit Court of Appeals and the district courts in this jurisdiction makes clear that an FDCPA violation based on a collection lawsuit has not occurred, and does not accrue, until the Plaintiff is served." Mot. 10. According to defendants, *Benzemann I* and its progeny stand for the proposition that "an FDCPA violation has not occurred until a Plaintiff is served." Mot. 10.

Plaintiff responds that "[a] cause of action accrues at the moment of the *injury*, and in an FDCPA cause of action involving a misleading or unfair collections lawsuit, the injury happens when the consumer has *notice* of the lawsuit." Opp'n 18. Plaintiff

distinguishes her case by arguing that defendants' cited cases "zeroed in on service of the complaint as the key moment because . . . service was the moment when the plaintiffs received notice of the FDCPA violation." Opp'n 17. Here, in contrast, plaintiff did receive notice—and was subsequently injured—through another means: learning about the lawsuit from her mother. Opp'n 18. In plaintiff's view, defendants' position is a "formalistic, blanket rule," that "has no basis in the case law," which in fact "twists th[e] case law by ignoring its reasoning." Opp'n 4.

To begin, contrary to defendants' argument, Second Circuit precedent does not hold that an FDCPA claim in the context of collection lawsuits can only occur at the point of service. Instead, when an FDCPA cause of action accrues depends on when an unlawful collection action causes injury. *See Benzemann II*, 924 F.3d at 79. Specifically, the Second Circuit has held than an FDCPA violation occurs once an individual has been injured by allegedly unlawful conduct. *See Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-cv-202, 2024 WL 2207061, at *1 (2d Cir. May 16, 2024) (summary order) ("An FDCPA violation occurs when an individual is injured by the alleged unlawful conduct."). Moreover, "[t]he Second Circuit has spoken approvingly of, although not outright adopted, the Fifth Circuit's rule that a lawsuit is brought for purposes of § 1692i when a debtor receives notice of the suit." *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 113 (S.D.N.Y. Feb. 27, 2016); *see also id.* at 113 n.1 (analyzing when and where debt collection action was brought for purposes of Section 1692i and noting that "*Benzemann [I]* does not control th[e] case outright"). Indeed, the specific holding in *Benzemann I* was that "where a debt collector sends an allegedly unlawful restraining notice to a bank, the FDCPA violation does not occur for

purposes of Section 1692k(d) until the bank freezes the debtor's account." *Benzemann I* at 103. The *Benzemann I* court did not address when a plaintiff has a complete cause of action pursuant to Sections 1692e and 1692f based on an improperly filed and litigated debt collection suit.

Next, defendants' insistence that an FDCPA violation cannot "occur" in the absence of service is misplaced. *See* Mot. 10. As the Second Circuit has explained, "[a]n FDCPA violation occurs, for the purposes of the FDCPA's one-year statute of limitations, when an individual is *injured* by the alleged unlawful conduct." *Benzemann II*, 924 F.3d at 83 (emphasis added). Put differently, "a cause of action accrues when conduct that invades the rights of another has caused injury." *Benzemann I*, 806 F.3d at 101. Thus, as plaintiff contends, an injury caused by allegedly unlawful conduct is what turns an FDCPA violation into a "complete cause of action." *Id.* at 103; *see also* Opp'n 15.

The relevant inquiry then is whether and when plaintiff was injured by defendants' allegedly unlawful conduct. "Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018). Section 1692e "secures a consumer's right to be free from false, deceptive, or misleading practices by debt collectors," and Section 1692f "protects a consumer from debt collectors who use unfair or unconscionable means of collecting debts." *Ceban v. Cap. Mgmt. Servs., L.P.*, No. 17-cv-04554, 2018 WL 451637, at *4 (E.D.N.Y. Jan. 17, 2018).

As alleged, plaintiff suffered the precise type of injuries that the FDCPA was enacted to protect against. Plaintiff alleges that she was wrongfully named as a defendant in a debt collection lawsuit. Compl. 2. When plaintiff received notice of the suit, albeit not

13

through formal service, she felt overwhelmed, stressed, and humiliated. Compl. ¶¶ 84, 87, 92. She had to leave her job, litigate the debt collection suit on her own, and eventually seek out legal counsel. Compl. ¶¶ 74, 80, 86. In short, defendants' allegedly unlawful conduct significantly "disrupt[ed]" plaintiff's life. *Cohen*, 897 F. 3d at 81.

That an FDCPA violation is tied to injury rather than service is underscored by defendants' cited cases. For example, in *Serna*, the Fifth Circuit addressed whether the statute of limitations for an alleged violation of 15 U.S.C. § 1692i(a)(2) begins to run upon filing or service of a complaint. 732 F. 3d at 442. That provision of the FDCPA, also known as the "fair venue provision," provides that "[a]ny debt collector who brings any legal action on a debt against any consumer shall . . . bring such action only in the judicial district . . . (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a)(2). The court was tasked with interpreting whether "bring such action," refers to filing or serving a complaint. *Serna*, 732 F.3d at 442–43.

In turning to the congressional purpose of the FDCPA, the court concluded that "the FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice." *Id.* at 445. Specifically, the court reasoned that "the remedial nature of th[e] statute is best served . . . by tying a violation of § 1692i(a)(2) to notice necessitating action because this approach: (1) most directly focuses on the harm Congress sought to remedy through the FDCPA, and (2) best preserves the availability of relief for consumers." *Id.* As the court explained:

> When a debt collector files suit against an alleged debtor in contravention of § 1692i(a)(2), no harm immediately occurs because the debtor likely has no knowledge of the suit and has no need to act. Therefore, tying a violation to the mere filing

14

of a complaint does not serve the statute's remedial purpose. Upon receiving notice, however, the harm is realized because the debtor must then respond in a distant forum or risk default. Because the harm of responding to a suit in a distant forum arises only after receiving notice of that suit, a violation does not arise under § 1692i(a)(2) until such time as the alleged debtor receives notice of the suit.

*Id.*

Accordingly, the *Serna* court held that "a violation of § 1692i(a)(2) is not complete until the alleged debtor *becomes aware* of the debt-collection suit." *Id.* at 446 (emphasis added).

*Serna* illustrates that an FDCPA violation occurs once "the harm is realized." *Id.* at 445. The harm contemplated by Section 1692i(a)(2)—being required to respond to a distant forum—is realized when a plaintiff becomes aware of a complaint filed in an improper venue, which typically transpires through service of process. Here, however, plaintiff brings claims pursuant to Sections 1692e and 1692f. *See* Compl. ¶ 105. The principal harm contemplated by those provisions is "abuse by debt collectors." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). Specifically, Section 1692e "targets practices that take advantage of a debtor's naivete or lack of legal acumen," and Section 1692f "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Id.* at 136. Here, that harm was "realized" in plaintiff's case when she was notified by her mother of the Collection Action against her concerning a debt which plaintiff alleges defendants "knew or should have known" she did not owe, and thereafter forced to litigate the allegedly unlawful suit.[5] *See*

---

[5]    For the avoidance of doubt, the Court does not opine on whether plaintiff could state a claim under Section 1692i because she was not formally served with the complaint in the Collection Action. Some courts have found that service is not required to state a

Compl. ¶ 52; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 170 n.1 (2d Cir. 2015) (explaining that "lawyers who regularly, through litigation, attempt to collect consumer debts," may "violate the FDCPA by taking or threatening to take legal action where recovery is precluded as a matter of law").

Likewise, in *Johnson*, the Tenth Circuit addressed an argument by the defendant-appellee that an FDCPA violation "occurred" for statute of limitations purposes when a debt collection complaint was filed, rather than when it was served. 305 F.3d at 1113. In rejecting that argument and holding that "no violation occurs" until a plaintiff has been served, the court explained that "[i]f the debt collector files suit against the FDCPA plaintiff but then elects to call off the process server and abandon the collection suit before the plaintiff has been served, it cannot be said that the abandoned lawsuit constitutes an attempt to collect on the debt within the meaning of the FDCPA." *Id.* at 1113–14.

Courts have interpreted *Johnson* to stand for the proposition that "in the event a debt collector abandons a debt collection suit before the plaintiff had been served, this would not constitute an attempt to collect from the plaintiff, and therefore would not constitute a violation" pursuant to the FDCPA. *Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-cv-00967, 2014 WL 2200909, at *6 (E.D.N.Y. May 23, 2014); *see also Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1044–45 (9th Cir. 2023) ("The [*Johnson*] court explained that if a debt collector files a suit but then 'elects to call off the process server and abandon the collection suit before the plaintiff has been served,' the abandoned

---

claim under Section 1692i. *See e.g.*, *Parson v. Midland Funding LLC*, No. 16-cv-80020, 2016 WL 1692095, at *3 (S.D. Fla. Apr. 21, 2016) ("The Court finds that a violation of § 1692[i](a)(2) occurs when the debtor receives notice of the filed lawsuit, which may be accomplished by either informal notice or formal service.").

lawsuit does not constitute an 'attempt to collect' the debt under the FDCPA.") (quoting *Johnson*, 305 F.3d at 1113–14).

This is quite plainly the opposite of what plaintiff alleges happened here. Defendants did not "call off the[ir] process server and abandon the[ir] collection suit." *Johnson*, 305 F.3d at 1113. On the contrary, plaintiff alleges that defendants aggressively litigated against her even after her repeated attempts to apprise them that she "should not be a defendant" in the Collection Action.[6] *See* Compl. ¶¶ 51–69. Moreover, defendants stated that even if they agreed to dismiss the Collection Action, they would want "to re-file and attempt service again." Compl. ¶ 68. The *Johnson* court explained that an abandoned lawsuit—before an alleged debtor is served—cannot be said to "constitute[] an attempt to collect on the debt within the meaning of the FDCPA." 305 F.3d at 1114. But here, plaintiff expressly alleges that defendants prosecuted their lawsuit against her for nearly ten months, and repeatedly "attempted to collect on the debt," which they allegedly knew she did not owe. Compl. ¶ 69.

Of note is that *Benzemann I*, *Serna*, and *Johnson* all interpreted the FDCPA and the point which a violation "occurs" in a manner which allowed, rather than foreclosed, the consumer to seek relief. *See Benzemann I*, 806 F.3d at 102 ("[T]here is a similar concern that linking the statute of limitations to the sending of the restraining notice would shorten the already limited amount of time that FDCPA plaintiffs have to file suit."); *Serna*, 732 F.3d at 445 (stating that tying a violation to service of the complaint

---

[6]    Because plaintiff alleges that defendants did not abandon the Collection Action, Compl. ¶¶ 56–73, the Court does not opine on whether an injury occurs for purposes of the FDCPA if a consumer receives informal notice of an allegedly unlawful debt collection suit, but the debt collector elects to abandon the suit in a timely fashion.

"best preserves the availability of relief for consumers"); *Johnson*, 305 F.3d at 1114 (rejecting tying FDCPA violation for statute of limitations purposes to filing of the complaint because that "could cause the limitations period to run out before there was any opportunity for the debtor to bring suit under the FDCPA"). Indeed, from the "perspective of the least sophisticated consumer," a plaintiff who becomes aware she has been named in a debt collection lawsuit may have a well-founded belief that she will need to appear in court, retain an attorney, or otherwise defend herself, irrespective of the validity of the alleged debt or the fact that she was not formally served with the complaint. *See Park*, 2019 WL 5895703, at *2.

Despite the attendant harms that the filing of a complaint and the prosecution of debt collection proceedings can cause a consumer, defendants would have the Court hold that there can never be an FDCPA violation in the debt collection lawsuit context where an alleged debtor is not formally served. *See* Mot. 6; *see also Lautman*, 2014 WL 2200909, at *7 n.4 ("This court takes seriously the concern . . . that the filing of a complaint may itself cause harm to a debtor."); *Onfroy v. Law Offices of Geoffrey T. Mott, P.C.*, 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024) (explaining that the harm the plaintiff suffered from having to defend herself from duplicative debt collection lawsuits "is similar to the harms of malicious prosecution, wrongful use of civil proceedings, and abuse of process"). Put differently, despite the fact that plaintiff allegedly "was in fact injured" by defendants' unlawful conduct, defendants contend that "a breach of the law never took place," simply because she was never formally notified. *Benzemann II*, 924 F.3d at 80. The Court declines the invitation to adopt such an imprecise interpretation of the caselaw and instead concludes that plaintiff plausibly alleges that she was injured by defendants'

unlawful conduct, and thus can plausibly state that "an FDCPA violation occur[ed]," even in the absence of formal service of process. *Id*. at 81.

Defendants' argument that "[d]istrict courts in this circuit have consistently and unambiguously . . . h[eld] that an FDCPA violation and resultant cause of action is not complete until a Plaintiff is served," is unconvincing. Mot. 12. For one, defendants' interpretation would have the Court elevate form over substance, as many of their cited cases place emphasis on the fact that *notice* need be given to potential FDCPA plaintiffs, rather than special importance on service of process as the required form of notice. *See Samms*, 163 F. Supp. 3d at 113 ("The harms the FDCPA was designed to prevent do not occur until a debtor receives *notice* of a collection lawsuit."); *see also Lautman*, 2014 WL 2200909, at *7 (explaining that tying the trigger of the statute of limitations for the FDCPA to service of process "corresponds with the provision of *notice* to a potential plaintiff of the facts underlying their FDCPA claim"). Relatedly, plaintiff's case is distinguishable because she alleges that she in fact received notice of the collection lawsuit, without formal service. *See* Opp'n 18; *see also Sam v. Cohen & Slamowitz, LLP*, No. 14-cv-00611, 2015 WL 114076, at *5 (W.D.N.Y. Jan. 8, 2015) (explaining that the plaintiff "was never served with the summons and complaint in the underlying collection action, *and that he did not otherwise receive notice of the action*") (emphasis added). Finally, defendants' cited cases simply addressed when the statute of limitations is triggered for purposes of the FDCPA, they do not address the precise question of when the harm occurs as presented here—specifically, whether a plaintiff can state a claim under Sections 1692e or 1692f where they have plausibly alleged that they were injured by an unlawful debt collection suit of which they were informally notified of and

subsequently litigated. *Cf. Mora v. LVNV Funding LLC*, 408 F. Supp. 3d 297, 300 (W.D.N.Y. 2019) ("But none of the cases [the defendant] cites faced the question presented here: whether the statute of limitations runs from the *filing* of the complaint or the *service* of the complaint.").

Accordingly, the Court rejects defendants' argument that plaintiff cannot state a claim under the FDCPA simply because she was never formally served with the summons and complaint in the Collection Action. *See* Mot. 6.

### III.    FDCPA Violations Based on Collection Action

Whether plaintiff sufficiently alleges a claim under either Sections 1692e or 1692f presents a different question. "Sections 1692e and 1692f are broad, potentially overlapping, and are not mutually exclusive." *Guzman v. Mel S Harris & Assocs., LLC*, No. 16-cv-03499, 2018 WL 1665252, at *9 (S.D.N.Y. Mar. 22, 2018) (quoting *Arias*, 875 F.3d at 136). Indeed, as both sections "share the goal of protecting consumers from abuse by debt collectors," it is possible that "the same conduct by a debt collector can violate both sections at once." *Remler v. Cona Elder L., PLLC*, No. 21-cv-05176, 2022 WL 4586243, at *4 (E.D.N.Y. Sept. 29, 2022). Plaintiff alleges that defendants violated Sections 1692e and 1692f because, among other things, the Collection Action misrepresented the character or legal status of the debt, and the Collection Action constituted an unfair or unconscionable means to collect the debt. *See* Compl. ¶ 105. The Court agrees.

#### A.  *Section 1692e*

Pursuant to Section 1692e, debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any

debt." 15 U.S.C. § 1692e. Section 1692e sets out a non-exhaustive list of prohibited conduct, "which includes the threat to take any action that cannot legally be taken or that is not intended to be taken and the false representation of 'the character, amount, or legal status of any debt.'" *Remler*, 2022 WL 4586243, at \*4 (quoting 15 U.S.C. § 1692e). "[A]n attempt to collect a debt from a non-debtor constitutes a false representation as to the character or status of the debt in violation of 1692e." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (collecting cases). This includes, for example, where a debt collector commences and prosecutes a debt collection lawsuit without a legal basis to seek payment of a debt "that plaintiff d[oes] not actually owe." *See Finch v. Slochowsky and Slochowsky, LLP*, No. 19-cv-06273, 2020 WL 5848616, at \*3 (E.D.N.Y. Sept. 30, 2020). In other words, if plaintiff "does not in fact owe the debt, she has a viable § 1692e claim for the misstatement of a debt obligation." *Pacheco v. Afni, Inc.*, No. 17-cv-06751, 2019 WL 13276876, at \*6 (E.D.N.Y. Mar. 20, 2019).

Plaintiff sufficiently alleges that she did not in fact owe the debt that was the subject of the Collection Action—and that defendants should have known she did not owe the debt—and therefore plausibly states a claim pursuant to Section 1692e. Plaintiff alleges that she signed the Service Agreement as power of attorney for her mother *i.e.*, on her mother's behalf. *See* Compl. ¶¶ 19, 22; *see also* Service Agreement 3. Plaintiff further alleges that she left the "guarantor" section of the Service Agreement blank, with the understanding that "the sole party with financial responsibility" would be her mother. Compl. ¶¶ 23–25, 28–29; *see also* Service Agreement 3. Defendants allegedly possessed the Service Agreement when they commenced the Collection Action, and represented to the state court that they had meaningfully reviewed the document prior to bringing suit.

Compl. ¶¶ 36–38. Iacovo repeatedly communicated to defendants that she "should not be a defendant" in the collection lawsuit because she signed the Service Agreement as her mother's representative, not as a guarantor of payment. *See* Compl. ¶¶ 51, 59–60, 62, 65. Despite these warnings, defendants continued to attempt to collect the debt from Iacovo, until eventually agreeing to discontinue the case without prejudice. *See* Compl. ¶¶ 69, 73. These allegations are sufficient to state a claim pursuant to Section 1692e. *See Wagner v. Chiari & Illecki, LLP*, No. 15-cv-00633, 2019 WL 1083025, at *6 (W.D.N.Y. Mar. 7, 2019), *aff'd on other grounds*, 973 F.3d 154 (2d Cir. 2020) (concluding that defendant violated Section 1692e where "plaintiff received a collection attempt from [d]efendant, contacted [d]efendant to explain that he was not the debtor, and [d]efendant attempted to collect the debt again").

Relying on the Service Agreement attached to the complaint, defendants contend that Iacovo was properly sued in the Collection Action. *See* Mot. 14–17. Specifically, defendants contend that the Service Agreement "clearly requires that the Personal Representative—here, Iacovo—[wa]s responsible to pay upon receipt[,]" of invoices for any services rendered. Mot. 15. According to defendants, "[a] plain reading of the terms of the [Service Agreement] demonstrate that Iacovo agreed to the simple conditions therein, which obligated her to pay for her mother Geraldine's care." Mot. 15.

Defendants' arguments are unavailing. For one, at the motion to dismiss stage, "the Court must accept as true the allegation that [p]laintiff did not owe the debt that [d]efendants sought to collect." *See DeWolf v. Samaritan Hosp.*, No. 17-cv-00277, 2018 WL 3862679, at *4 (N.D.N.Y. Aug. 14, 2018). Nothing from the face of the Service Agreement undermines plaintiff's allegation or otherwise indicates that she assumed

financial responsibility for payment. Indeed, the "guarantor" section of the Service Agreement was left blank, and plaintiff clearly signed the agreement in her representative, not individual, capacity. *See* Service Agreement 3; *see also Interactive Motorsports & Ent. Corp. v. Dolphin Direct Equity Partners, LP*, 419 F. App'x 60, 62 (2d Cir. 2011) ("[A]n agent for a disclosed principal will not be personally bound by the contract unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal."). Moreover, on a motion to dismiss, the court "resolve[s] any contractual ambiguities in favor of the plaintiff." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Accordingly, plaintiff plausibly alleges that she did not owe the debt that was the subject of the Collection Action, that defendants knew or should have known she did not owe the debt, and therefore defendants' attempt to collect the debt through the prosecution of the Collection Action against her violated Section 1692e.

### B. Section 1692f

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In this circuit, "unfair or unconscionable means refers to practices that are shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Polak v. Kirschenbaum & Phillips, P.C.*, No. 17-cv-01795, 2018 WL 1189337, at *5 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1187400 (Mar. 6, 2018) (quoting *Arias*, 875 F.3d at 135). Unfair or unconscionable litigation conduct is actionable under Section 1692f. *See Villalba & Houslanger & Assoc., PLLC*, No. 19-cv-04270, 2022 WL 900538, at *6 (E.D.N.Y. Mar. 28, 2022); *see also Arias*, 875 F.3d at 138. Specifically, a debt collector

engages in unfair or unconscionable litigation conduct in violation of Section 1692f when it, in bad faith, "unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Arias*, 875 F.3d at 138. This also includes when a debt collector has documentary proof prior to filing a collection lawsuit that there is no legal basis to pursue the claim. *See id.*; *see also Remler*, 2022 WL 4586243, at *5.

Plaintiff alleges that precise type of conduct here. Iacovo alleges that defendants had documentary proof that she did not owe the debt before they brought suit. *See* Compl. ¶¶ 35–36. She further alleges that defendants refused to dismiss her from the Collection Action, even after her repeated attempts to apprise them that she did not owe the debt. *See* Compl. ¶ 66. What's more, defendants allegedly offered to discontinue the action only if "the Iacovos ha[d] a settlement offer," that they were willing to make. Compl. ¶ 69. Together, these allegations state a plausible claim to relief pursuant to Section 1692f. *See Villalba*, 2022 WL 900538, at *10 ("Knowingly prolonging a baseless litigation against a consumer, and . . . offering to settle that suit only if the consumer provides something in return, is unfair or unconscionable litigation conduct, as well as an attempt to collect an invalid debt."); *see also Remler*, 2022 WL 4586243, at *1 (permitting FDCPA claims "pertaining to the alleged misstatement of the amount owed by the plaintiff and [an] attempt to collect an amount not expressly authorized by agreement" to proceed pursuant to Section 1692e and 1692f).

Defendants do not meaningfully challenge whether their litigation conduct violated Section 1692f apart from their argument that Iacovo was a proper defendant in the Collection Action. *See* Mot. 14–17. This argument is unpersuasive for the same reasons

stated above, namely, that plaintiff plausibly alleges she did not in fact owe the debt. *See supra* Part III.A.

*    *    *

In sum, plaintiff sufficiently alleges that defendants falsely represented the character and legal status of the debt, and that defendants' litigation conduct was unfair or unconscionable. Accordingly, plaintiff plausibly alleges violations of the FDCPA and defendants' motion to dismiss those claims must be denied.[7]

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is **DENIED.** Defendants shall file and serve an answer to the complaint on or before May 1, 2025.

**SO ORDERED.**

__/s/ Natasha C. Merle___<br>
NATASHA C. MERLE<br>
United States District Judge

Dated:        April 17, 2025<br>
              Brooklyn, New York

---

[7]    Because the Court concludes that plaintiff plausibly alleges a violation of the FDCPA, the Court has subject matter jurisdiction over this case. *See Carlson v. Long Island Jewish Med. Center*, 378 F. Supp. 2d 128, 133 (E.D.N.Y. 2005) ("In view of the fact that the court has not dismissed the FDCPA claim, federal jurisdiction is upheld at this time."). Defendants' motion to dismiss is also denied insofar as it is premised upon a lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See* Mot. 5.