UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
THERESA IACOVO,

                                   Case No.: 2:24-cv-4372-NCM-ARL

                    **Plaintiff,**

      -against-

MAGGUILLI LAW FIRM, PLLC, and
LAWRENCE P. MAGGUILLI,

                    **Defendants.**
----------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR LEAVE TO AMEND HER COMPLAINT**

 

The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor
Brooklyn, NY 11241-1026
(718) 522-7900
*Co-Counsel for Plaintiff Theresa Iacovo*

Legal Services of Long Island
1757 Veterans Highway, Suite 50
Islandia, NY 11749
(631) 232-2489
*Co-Counsel for Plaintiff Theresa Iacovo*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii
A. PRELIMINARY STATEMENT ........................................................................................ 1
B. PROCEDURAL HISTORY................................................................................................ 2
C. FACTUAL ALLEGATIONS ............................................................................................. 2
D. LEGAL STANDARD....................................................................................................... 10
E. ARGUMENT .................................................................................................................... 12
   1. *Plaintiff's Proposed Amendment Is Not Futile* .......................................................... 12
   2. *Plaintiff's Proposed Amendment Is Not In Bad Faith, Unduly Delayed, or Unduly Prejudicial*................................................................................................................... 15
F. CONCLUSION................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012) .................. 13
*Colnaghi, U.S.A. v. Jewelers Prot. Servs.*, 611 N.E.2d 282, 284 (N.Y. 1993) ............................ 12
*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, 2025 WL 871637 at *9 (S.D.N.Y. 2025) 1, 12
*Heintz v. Jenkins,* 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) .............................. 14
*Lindor v. Palisades Collection, LLC*, 30 Misc. 3d 754, 762-763, 914 N.Y.S.2d 867, 874 (Sup. Ct. 2010) ......................................................................................................................... 13
*Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024) ................................... 11
*Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) ............. 11
*Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) .................................................. 11
*Sanchez v. Ehrlich*, 2018 WL 2084147 at *7 (S.D.N.Y. 2018). .................................................. 14
*State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 Fed. Appx. 36, 38 (2d Cir. 2006) (unpublished) .... 11
*State Teachers Ret. Bd. V. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ................................ 11
*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ....................................... 11

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") .......................... 1, 11, 13

**Regulations**

45 C.F.R. § 164.502 ................................................................................................... 20, 21

### A.    PRELIMINARY STATEMENT

Defendants Magguilli Law Firm PLLC and Lawrence P. Magguilli (collectively, "Defendants"), on behalf of a home health aide agency, brought and continued for many months a lawsuit against Plaintiff Theresa Iacovo ("Ms. Iacovo") for a debt she did not owe – a core violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). As explained in more detail below, Ms. Iacovo, seeking help for her 88-year-old blind mother Geraldine Iacovo, arranged for her mother to enter into a contract to obtain home health aide services – and Ms. Iacovo signed as her mother's "Authorized Personal Representative."[1] The contract Defendants had even prior to filing suit did not even mention the possibility that she, as Authorized Personal Representative, would be personally liable for her mother's bills – yet Defendants sued Ms. Iacovo anyway. Further, Defendants willfully refused to discontinue the action as to Ms. Iacovo, despite multiple demands for the same. Worse yet, Defendants made clear that they intended to file suit again and sought to obtain payment.

Plaintiff seeks leave to amend her complaint to include a claim for gross negligence and the possibility of punitive damages. Indeed, between the filing of the complaint and now, courts have continued to hold that the conduct alleged in this suit—the intentional misrepresentation by a debt collector of a consumer's legal rights—amounts to gross negligence. *See Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, 2025 WL 871637 at *9 (S.D.N.Y. 2025). Plaintiff's counsel sought Defendant's consent to amend the complaint for months before finally receiving a definitive response, in the negative.

For these reasons, Ms. Iacovo respectfully asks the Court to grant her Motion for Leave to Amend. Attached as exhibits to this filing are clean and redlined copies of the proposed amended complaint.

---
1 Sadly, Geraldine Iacovo recently passed away during the pendency of this action.

1

B.   **PROCEDURAL HISTORY**

This action was filed on June 20, 2024. Defendants appeared in this action on August 27, 2024, through counsel, and soon thereafter filed a Motion to Dismiss. After conferences and briefing, Defendants' Motion to Dismiss was denied on April 17, 2025. Defendants subsequently filed an answer on May 1, 2025, and a scheduling order was entered on May 19, 2025, referring this case to alternative dispute resolution. Pursuant to the order, the parties held a telephone conference to discuss settlement—as well as the issue of amending the complaint—on June 18, 2025. At the June 18 conference, Defendants did not have an answer as to whether they would consent to the amending of the complaint; over a month later, on August 1, only after Plaintiff's counsel indicated his intent to file this motion for leave to amend the complaint, Defendants finally responded that they would not consent to the amending of Plaintiff's complaint.

C.   **FACTUAL ALLEGATIONS**

On December 18, 2018, Theresa Iacovo executed a Durable Power of Attorney over healthcare decisions regarding her mother Geraldine Iacovo. Complaint, Dkt. No. 1, ¶ 12. While Geraldine Iacovo was mentally competent, she was legally blind and needed assistance, both to understand financial and healthcare documents as well as to do tasks like taking a shower and cooking. *Id*. ¶ 13. When Geraldine Iacovo moved to New York, she retained the services of Attentive Care in order to have a home health aide with her five days a week while her daughter was working and unable to assist her. *Id*. ¶ 14.

***Theresa Iacovo Did Not Agree to Personal Liability and the Guarantee of Payment Section of the Service Agreement Is Blank***
On January 24, 2021, Geraldine Iacovo signed a Service Agreement with Attentive Care.

*Id.* ¶ 15, **Exhibit A** (Service Agreement).² The Service Agreement began with "Client/Patient Name: Geraldine Iacovo," and contained the following pertinent provisions:

- "Payment Terms and Unconditional Guarantee: I hereby assign all medical and/or surgical benefits to include major medical benefits to which I am entitled, including Medicaid, no-fault benefits, private insurance, Health Maintenance Organizations, Long Term Care Insurance benefits and all other health plans to: Attentive Care, Inc. I understand that acceptance of this assignment of benefits by Attentive Care does not guarantee payment. Payment is due upon receipt of invoice as indicated in this Service Agreement." **Exhibit A** (Service Agreement) ¶ 8.
- "I hereby absolutely and unconditionally guarantee to Attentive Care, Inc. the prompt payment when due of any and all past and future invoices. I understand I am fully financially responsible for any and all charges incurred in the course of treatment services rendered and shall pay weekly invoices upon receipt… *Id.* ¶ 11.

These and the other provisions on the first two pages of the Service Agreement use the first person pronoun "I," clearly referring to promises made by the "Client/Patient" named at the beginning of the agreement. In the field labelled "Client Signature," Geraldine Iacovo signed her name. **Exhibit A** (Service Agreement) p. 2. On the next page, in the field labelled "Authorized Personal Representative Signature," Theresa Iacovo signed her name. *Id.*, p. 3. The term "Authorized Personal Representative" is not used in any of the provisions on the first two pages of the Service Agreement. *Id.* pp. 1, 2. In this context, "Personal Representative" is clearly being used as the term of art in the healthcare industry (which is also the plain meaning of the term) – a person given authority by the client to make decisions on their behalf. Complaint ¶ 21.

The neighboring field "Relation to Client" is filled in with "Daughter POA." *Id.* ¶ 22. Beneath the section filled out by Theresa Iacovo is a section titled in bold text "**This is a Guarantee of Payment**." *Id.* at ¶ 23. This section clearly lays out an agreement to guarantee "prompt payment when due of any and all past and future invoices." *Id.* at ¶ 24. However, this section was left blank. *Id.* at ¶ 25. Notably, it bears a different title for the signatory than the section filled out by Theresa Iacovo, labelled "Co-signer/Guarantor" rather than "Authorized

---

2 The Exhibits referenced in this Memorandum of Law are Exhibits to the Complaint, Dkt. No. 1.

3

Personal Representative." *Id.* at ¶ 26. Further, the document notes "A copy of a document authorizing the Co-signer/Guarantor, (Power of Attorney, Court Order Appointing Guardian, etc.) must be attached hereto and made part hereof. *Id.* at ¶ 27. No such "document" is attached. *Id.* at ¶ 28. It is therefore clear that no third party agreed to be guarantor of payment for "any and all past and future invoices," and the sole party with financial responsibility of such invoices was Geraldine Iacovo. *Id.* at ¶ 28. Geraldine Iacovo and Theresa Iacovo signed their respective sections of the Service Agreement with this understanding. *Id.* at ¶ 29. While there is no signature from Attentive Care on this copy of the Agreement, their acceptance thereof is demonstrated by their performance of the services enumerated in the Agreement as well as seeking payment for invoices thereof. *Id.* at ¶ 30. Accordingly, Attentive Care accepted and agreed to there being no guarantor of payment, and Geraldine Iacovo being the sole financially responsible party. *Id.* at ¶ 31.

***The Lawsuit Is Filed Against Theresa Iacovo Despite No Basis for Liability***

On June 27, 2023, the Defendants, on behalf of Attentive Care, filed a Summons and Complaint in New York Supreme Court, County of Suffolk to initiate a collection lawsuit against Geraldine Iacovo and Theresa Iacovo, captioned *Attentive Care of Albany, Inc. v. Geraldine Iacovo and Theresa Iacovo*, Index No. 615830/2023 ("the Collection Lawsuit"). *Id.* at ¶ 31 The Summons and Complaint were both signed by Defendant Lawrence P. Magguilli. *Id.* at ¶ 32. Further, it attached as "Exhibit A" the Service Agreement. *Id.* at ¶ 33.

The very Service Agreement Defendants attached to the Verified Complaint demonstrates that the Defendants had no basis to sue Theresa Iacovo. *Id.* at ¶ 35; supra pp. 3,4. In addition, when receiving the account from Attentive Care, and prior to filing suit, Defendants received from Attentive Care a "New Claim Placement Form" that provided additional evidence that

4

Theresa Iacovo had no liability. *Id.* at ¶ 36 *citing to* **Exhibit C** (New Claim Placement Form). Under the header "debtor information" the Form named Geraldine Iacovo. *Id.* However, the name under "co-debtor information" was blank. Under "additional remarks" the Form simply noted, "Daughter is POA from Mother." *Id.*

The Collection Lawsuit alleged 5 causes of actions against Theresa Iacovo: Breach of Contract, Attorney's Fees, Account Stated, Unjust Enrichment and Quantum Meruit. *Id.* ¶ 41. No claim for breach of contract could lie against Theresa Iacovo, as she did not agree to anything by signing the contract other than that she assisted her mother in signing up for the services. *Id.* ¶ 42. Theresa Iacovo did not "absolutely and unconditionally guarantee" payment to Attentive Care because agreement to this promise required signing the section titled "This is a Guarantee of Payment," and that section was not signed by any party. *Id.* ¶ 43. No claim for attorney's fees against Theresa Iacovo could lie because this claim depended on a provision for attorney's fees in the Service Agreement which was only agreed to by Geraldine Iacovo. *Id.* ¶ 44. No claim for account stated could lie against Theresa Iacovo as she clearly and consistently told Attentive Care that she would not and did not agree to be personally liable for the debt, and all invoices provided clearly show the services at issue were being provided to Geraldine Iacovo per the Service Agreement. *Id.* ¶ 45. No claim for unjust enrichment could lie against Theresa Iacovo as all services were provided to Geraldine Iacovo, and thus Theresa Iacovo was not "enriched." *Id.* ¶ 46. No claim for quantum meruit could lie against Theresa Iacovo as no home healthcare services were provided to her – all services were provided to Geraldine Iacovo. *Id.* ¶ 47. The Collection Lawsuit sought $10,494.38 with interest and costs. *Id.* ¶ 48. While Theresa Iacovo would learn about the Collection Lawsuit from her mother, it was never served on her. *Id.* ¶ 48.

***Defendants Aggressively Litigate the Collection Lawsuit Even After Being Put on Notice that Theresa Iacovo Had No Personal Liability***

On July 28, 2023, Theresa Iacovo filed an Answer *pro se* on behalf of herself and, as Power of Attorney, on behalf of Geraldine Iacovo. *Id*. ¶ 50 *citing to* **Exhibit D** (*Pro Se* Answer). Most notably, the Answer states "Theresa Iacovo should not be a defendant in filing as she only serves as PoA for Geraldine Iacovo who is Blind – Theresa did not receive any services from Attentive Care nor is a guarantor of payment." *Id*. ¶ 52 citing to **Exhibit D** (*Pro Se* Answer), p. 2. Defendants already knew or should have known this from a basic review of the Service Agreement, where Theresa Iacovo is clearly identified as PoA and clearly did not fill out the section to guarantee payment to Attentive Care, and only Geraldine Iacovo signed to receive services from Attentive Care. *Id*. ¶ 53.

However, even if Defendants had failed to perform a basic review before filing the Collection Lawsuit, the Answer provided clear notice that no claim lay against Theresa Iacovo, and accordingly they should have moved to discontinue against her with prejudice. *Id*. ¶ 54.Instead, on September 27, 2023, Defendants filed against the mother a Motion to Strike the Answer and to enter a default judgment. *Id*. ¶ 54 *citing to* **Exhibit E** (Motion to Strike). When she learned of the Motion, Theresa Iacovo searched for representation in the Collection Lawsuit and was able to retain the services of Nassau Suffolk Legal Services (NSLS), a nonprofit providing free legal representation to low-income New Yorkers in Long Island. *Id*. ¶ 55

***Defendants Refuse to Discontinue with Prejudice Despite Admitting that Guarantor Section of Service Agreement Was Not Signed***

When NSLS appeared in the action, Defendants stipulated to withdraw their Motion to Strike and to allow the Iacovos to file an Amended Answer. *Id*. ¶ 56. On December 20, 2023, Theresa Iacovo filed an Amended Answer. *Id*. ¶ 57. Among other defenses, the Amended Answer laid out in detail why there was no cause of action against Theresa Iacovo. *Id*. ¶ 58 *citing to* **Exhibit F** (Amended Answer). ¶¶ 29-43, 50-53.

6

Expanding on the prior defense asserted, Theresa Iacovo noted that "Nowhere in the service agreement is there a definition of Authorized Personal Representative" and as such the court should look to how the term is defined under New York law, which makes it clear that Theresa Iacovo was only representing that she could "act on behalf" of Geraldine Iacovo "in making health care related decisions" *Id*. at 59 citing to **Exhibit F** (Amended Answer). ¶¶ 31-34). The Amended Answer concluded, as "Defendant Theresa Iacovo never intended to, and never did assume financial responsibility" that "This Court should dismiss the Complaint." *Id*. at 60.

When Defendants failed to take any actions to discontinue the Collection Lawsuit against Theresa Iacovo, she filed and served a Motion to Dismiss on February 18, 2024. *Id.* at 60 *citing to* **Exhibit G** (Motion to Dismiss). On April 10, 2024, Theresa Iacovo through her counsel emailed Defendants demanding that they discontinue the Collection Lawsuit. *Id*. at 61 *citing to* **Exhibit H** (Demand to Dismiss Case). In addition to repeating the prior reasons why no action lay against Theresa Iacovo, this Demand also noted that "the contract…refers at all times to Geraldine Iacovo in the first person," listing the following examples:

- Attentive Care "will strive to provide appropriate home health caregivers who meet my health care needs according to my physician's orders and nursing assessment" (Preamble);
- "I hereby voluntarily consent and request the service of Attentive Services (PCA)" (Preamble);
- "gi Client Initials" (Preamble);
- "I authorize information in my medical record to be released…on my behalf" (¶ 6);
- "I hereby assign all medical and/or surgical benefits to include major medical benefits to which I am entitled" (¶ 8); and
- "I hereby absolutely and unconditionally guarantee to Attentive Care, Inc. the prompt payment when due of any and all past and future invoices. I understand I am fully financially responsible…I agree to pay an additional charge for all collection costs, including reasonable attorney's fees" (¶ 11).

7

*Complaint* ¶ 63.

On April 11, 2024, Defendant Lawrence Magguilli responded by email "We did not oppose your motion – is there a reason the court didn't grant it? I believe you were correct in that we never obtained jurisdiction over her." *Id*. at 64 citing to **Exhibit I** (Emails). Theresa Iacovo responded on April 12, 2024 by counsel, stating that regardless of the issue of service that the contract showed on its face that there was no cause of action against Theresa Iacovo. *Id*. at 65 Defendants ignored the email. *Id*. at 66. On May 2, 2024, Theresa Iacovo's counsel sent a short follow up email stating "Sending again for your consent to dismiss." *Id*. at 67.

On May 9, 2024, nearly a month after the demand to dismiss on the merits with prejudice as to Theresa Iacovo was first made, Defendants responded stating that they would consent as to dismissal "as to both defendants without prejudice, but they would then want me to re-file and attempt service again." *Id*. at 68. Even worse, Defendants then attempted to collect on the debt (which it was clear Theresa Iacovo did not owe) by stating "I believe they would be willing to settle the matter if the Iacovos have a settlement offer they could make at this time." *Id*. at 69.

On May 13, 2024, Theresa Iacovo through her counsel again demanded immediate dismissal with prejudice. *Id*. at 70. **Exhibit J** (Email Claiming Liability). On May 14, 2024, Defendants admitted that "a separate guarantor signature block […] was not completed in this case," but nevertheless claimed that "as the authorized personal representative, Theresa Iacovo agreed to be personally responsible for the debt in addition to Geraldine." *Id*. at 71. To make this argument, Defendants pointed to the word "AND" between the signature blocks of Geraldine Iacovo and Theresa Iacovo, and then bizarrely pointed to a section of the contract which states that "co-signor/guarantor accepts responsibility for prompt payment of the services rendered." *Id*. at 72. Ultimately, the parties agreed to discontinue the case without prejudice. *Id*. at 73.

**Defendants' deceptive lawsuit has placed an additional burden on Theresa Iacovo while she**

8

**is already strained between working and taking care of her mother, causing injury.**

After Attentive Care stopped providing services to her mother and the lawsuit was filed against her, Theresa Iacovo had to leave her job to handle responding to the lawsuit and taking care of her mother. *Id*. at 74. Frustratingly, the Defendants kept calling Geraldine Iacovo and leaving messages. Because of her disabilities, Geraldine Iacovo cannot answer her phone. *Id*. at 75. After Geraldine Iacovo told Theresa Iacovo that someone had served legal papers on the home health aide (from a new agency), Theresa Iacovo waited and waited to either get personally served or receive something in the mail, but nothing happened. *Id*. at 76.

When Theresa read the Complaint, she noticed the claim for "periodontal services." It was frustrating that they were putting her through hell when they clearly were not doing their due diligence. *Id*. at 77.  She tried to keep calm for her mother's sake, but she was freaking out, wondering what would happen. *Id*. at 78. Theresa Iacovo knows that her mother's Social Security is exempt from being restrained or garnished, so she is worried that they will go after Theresa Iacovo's salary instead. *Id*. at 79.  To file the *pro se* Answer, Theresa had to go to a local law library in Central Islip to receive assistance. *Id*. at 80.  While she was there, she could not stop crying. *Id*. at 81. As a professional nanny, Theresa worried about getting work, knowing that background checks could show that there was a lawsuit against her. *Id*. at 81.

When Theresa got new work, she had to take time off work to handle the Collection Lawsuit. *Id*. at 82.  At the time, she made about $33 an hour. *Id.*. She also had to disclose to her boss that the lawsuit was happening in order to get help printing documents that she needed for court. *Id*. at 83. She paid money to send documents to the Defendants by certified mail. *Id*. at 84.

In court, she felt humiliated, that her mother's debt and the false statements about her were being exposed to the many strangers also in court. *Id*. at 84. She was worried that people would think she was a deadbeat and not paying her bills. *Id*. at 85.

9

It took her months to find representation in the Collection Lawsuit, speaking with multiple private attorneys, her local Assembly member, her Congressional representative, a deacon from her church, and many others. *Id*. at 86. She felt overwhelmed and like she was a failure. *Id*. at 87. Theresa felt like nobody would help her because she could not afford a lawyer, that she was on an island by herself. *Id*. at 88. She incurred expenses having to go to court. *Id*. at 89.

Theresa lost sleep over the Collection Lawsuit, grinding her teeth from the stress so much that she now needs to have dental work done. *Id*. at 90. To be able to sleep, Theresa Iacovo had to practice 10-minute meditations every night after helping her mother go to bed. She would also pray often. *Id*. at 91. Her mother felt guilty, that she was responsible for Theresa Iacovo being sued over her debt, which in turn would distress Theresa, causing both of their lives to spiral. *Id*. at 92. The distress became so severe after the first hearing in the Collection Lawsuit that Geraldine Iacovo had a stroke. *Id*. at 93. Theresa thought during the stroke that her mother had died, and even after her mother was taken to the hospital and regained consciousness, her inability to speak and the bruises covering her arms were horrific to Theresa Iacovo. *Id*. at 93

Theresa had indigestion due to the stress from the Collection Lawsuit. She would eat junk food to have some sense of comfort, causing her weight to fluctuate widely. *Id*. at 94. Theresa is embarrassed by her appearance, feeling like the exhaustion and stress apparent on her face makes her look like she's 82 years old. Her hair is falling out in chunks, and she is upset about how she will look for upcoming social events like a wedding. *Id*. at 95.

### D. LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . 21 days after service of a responsive

pleading or 21 days after service of a motion" to dismiss. Fed. R. Civ. P. 15(a)(2) continues: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Here, because Defendants answered her Complaint more than 21 days ago, Ms. Iacovo asks permission to file her FAC under Fed. R. Civ. P. 15(a)(2). While the text of the rule provides that leave should be "freely" given, "a district court may decline to grant such leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024) (citing to *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted).

"Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing to *State Teachers Ret. Bd. V. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (internal quotation marks omitted). Courts routinely grant leave to amend pleadings that were filed three, four, or even five years earlier. *See Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). That a party's request to amend would not "result in new problems of proof," that no trial date has yet been set, and that no motions for summary judgment have yet been filed are all factors pointing to a lack of undue prejudice. *State Teachers Ret. Bd.*, 654 F.2d at 856.

The cases that have upheld the denial of a motion for leave to amend demonstrate just how extreme the facts must be to justify the denial of leave. In *Ruotolo*, the Second Circuit upheld the denial of a motion to amend the file a third amended complaint *after the entry of final judgment*. *Ruotolo*, 514 F.3d at 190-93. See *also State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 Fed. Appx. 36, 38 (2d Cir. 2006) (unpublished) ("Appellants' motion to amend was submitted

11

four years after commencement of this action, almost one year after the close of discovery, and five months after the district court's summary judgment ruling.")

E.   ARGUMENT

A district court may decline to grant leave to amend, which is to be "freely" given, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Such good reason does not exist here, as Plaintiff's proposed amendment is not futile, not in bad faith, not unduly delayed, and not unduly prejudicial to the opposing parties.

   1.   **Plaintiff's Proposed Amendment Is Not Futile**

As referenced above, Plaintiff's proposed amendment to her complaint is far from futile: it makes a claim for gross negligence in circumstances similar to those which were held to state a claim for gross negligence in *Crespo*, a recent Southern District FDCPA decision. *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, 2025 WL 871637 (S.D.N.Y. March 20, 2025). In *Crespo*, the court held that Defendants' allegedly intentional misrepresentations—in that case, Defendants' false representation that the only way to lift a bank restraint was to sign a release authorizing the collection of exempt funds—constituted sufficient grounds to state a claim for gross negligence.

In *Crespo*, the plaintiff alleged that a defendant debt collector had advised him that the "only way" to secure the release of the funds restrained from his bank account was to sign a conditional release allowing the seizure by the collector of some of the restrained funds. This was not true under New York law. Under New York law, certain funds are exempt from collection efforts, including COVID-19 stimulus funds and unemployment benefits, which were the sources of the funds restrained in *Crespo*; when exempt funds are restrained, the consumer whose funds have been restrained has the right to submit an Exemption Claim Form detailing the

12

exempt status of the restrained funds to either their bank or the creditor's attorneys, and creditors must release restrained exempt funds upon receipt of the form. Such a misrepresentation violates the FDCPA. *Crespo*, 2025 WL 871637 at *6.. Violations of the FDCPA can also state a claim for gross negligence where conduct "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing," and an allegation that a defendant "intentionally lied" to a consumer debtor about their legal rights meets that standard. *Crespo*, 2025 WL 871637 at *9. Furthermore, the *Crespo* court found that evidence supporting the inference that defendants knew they were acting in disregard of a consumer debtor's rights—in that case, through the production of internal records questioning the legality of the defendant debt collector's conduct—could support a gross negligence claim. *Id.* Here, Defendants agreed to consent to a dismissal without prejudice—only on the bizarre condition that Defendants would re-file the lawsuit against the same two defendants, in spite of Theresa Iacovo's continued objections to Defendants' baseless assertion that she had signed as a guarantor. This evinces a reckless disregard for the rights of others and smacks of intentional wrongdoing.

Here, Defendants' intentional misrepresentations are at least as severe; Defendants falsely represented that Plaintiff was liable as a guarantor of payment for her mother's home health services while in possession of documentary evidence—the original contract—demonstrating the opposite, as Plaintiff had never signed the guarantor signature line and consciously chose to sign only the power of attorney signature line. Rather than misrepresenting an arcane point of law, Defendants misrepresented the very nature of their contractual relationship and the persons from whom they had a contractual right to collect payment—and Defendants' misrepresentation was evident on the face of the very document which formed the putative basis for their suit against Plaintiff.

13

The bar for gross negligence is a high one; gross negligence requires conduct which "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A. v. Jewelers Prot. Servs.*, 611 N.E.2d 282, 284 (N.Y. 1993). In a previous Southern District of New York FDCPA case, the court held that plaintiffs had failed to state a claim for gross negligence where defendants repeatedly sued based on faulty rent ledgers which overstated tenants' rent balances, finding that the complaint "fail[ed] to allege sufficiently a degree of neglect demonstrating a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public." *Sanchez v. Ehrlich*, 2018 WL 2084147 at *7 (S.D.N.Y. 2018). Here, Defendants lack even the thin exculpatory excuse of faulty documents; the wrongfulness of their suit, which stems from the fact that Theresa Iacovo was *not* a guarantor, was evident on the face of the very document which formed the basis for their suit. Attorneys and litigants owe a manifest duty to the public and to the courts to *actually read* the documents they file in court and upon which they base their legal claims.

Defendants may argue that a claim for negligence or gross negligence fails because Defendants, as attorneys, owed no duty to their adversaries, in this case the Iacovos. In their capacities as attorneys, this is true; attorneys do not owe their adversaries a duty of care for the purposes of negligence liability. However, debt collectors owe consumers a duty of care, and attorneys can be—and in this case, are—debt collectors. "Creditors and debt collectors owe debtors 'a duty of reasonable care' in the collection of their debts." *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013) *quoting Colo. Capital v. Owens,* 227 F.R.D. 181, 191 (E.D.N.Y.2005). "Defendants owe a duty to take reasonable steps in performing their work ...a duty to make a reasonable effort to get the information right, to avoid the harm to innocent, similarly named parties" *Lindor v. Palisades*

14

*Collection, LLC*, 30 Misc. 3d 754, 762-763, 914 N.Y.S.2d 867, 874 (Sup. Ct. 2010). Here, Defendants had a duty of reasonable care as a creditor and debt collector respectively to "get the information right" and not file lawsuits against persons who are not liable on the face of the documents which form the basis for their suit. They breached that duty by filing the Collection Lawsuit against Plaintiff and misrepresenting that she was a guarantor. Plaintiff does not assert that Defendants breached a duty they held to Plaintiff as attorneys for Attentive Care. Rather, they breached their duties to her as debt collectors under *Hawkins-El*. Substantial case law recognizes that parties can be both attorneys and debt collectors. *See e.g. Heintz v. Jenkins,* 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). Because Defendants violated the FDCPA for the reasons stated above, Defendants breached that duty of reasonable care.

## 2. Plaintiff's Proposed Amendment Is Not In Bad Faith, Unduly Delayed, or Unduly Prejudicial

A district court may decline to grant leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice." Plaintiff's proposed amendment is not made in bad faith, not unduly delayed, and not unduly prejudicial. Indeed, Plaintiff's counsel has been transparent in his desire to amend the complaint, repeatedly asking counsel for Defendants whether they would consent to amend for the above-discussed reasons and only filing this motion after Defendants finally made clear—following months of inquiry—that they would not consent to amend. No bad faith is present when counsel has been entirely transparent about his wish to amend the complaint and sought to obtain consent for the same.

Moreover, discovery has not even begun in this case. Indeed, an Initial Conference has yet to be held or a Scheduling Order set.

Delay alone is an insufficient basis for denying a motion to amend, "absent a showing of

15

bad faith or undue prejudice." *State Teachers Ret. Bd.* at 856. This leaves one argument: prejudice. "In determining what constitutes 'prejudice,' [the Second Circuit] consider[s] whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Discovery in this case has not yet begun in earnest, and in any event the scope of discovery will not be significantly altered by the addition of a claim for gross negligence, as the additional claim arises from the same facts and involves the same parties. Because the addition of a claim for gross negligence rests on the same facts and involves the same parties as the existing claims in this action, and thus requires minimal additional discovery, it would not significantly delay resolution of the dispute. And the amendment is proposed by Plaintiff, so Plaintiff cannot be prejudiced by it.

### F. CONCLUSION

For these reasons, Ms. Iacovo respectfully asks this Court to grant her Motion for Leave to Amend, and for such other and further relief as this Court deems appropriate.

Dated: Brooklyn, New York
October 14, 2025

Respectfully submitted,
/s/
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., Suite 2600
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com